**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ENKHBAYAR CHOIMBOL,** *et al*,

        **Plaintiff,**

        **v.**                          **CIVIL ACTION NO. 2:05cv463**

**FAIRFIELD RESORTS, INC.,** *et al.*,

        **Defendants.**

### *MEMORANDUM OPINION & ORDER*

Before the Court is Defendant Fairfield Resort's, Inc. ("Fairfield") Partial Motion to Dismiss Plaintiffs' Complaint under the Fair Labor Standard Act of 1938 ("FLSA"). Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Fairfield moves for dismissal of Count Two (Unjust Enrichment) and Count Four (Racketeer Influenced and Corrupt Organizations Act ("RICO") and RICO conspiracy). For the reasons stated below, Fairfield's Motion to Dismiss Count Two and Count Four is **DENIED.**[1]

### I.  FACTS AND PROCEDURAL HISTORY

For the purposes of the motion, the Court assumes the following facts are true. Plaintiffs are current or former employees of Fairfield, Robert W. "Bob" Nunnery ("Nunnery"), Petra Chemical & Consulting, Inc. ("PC&C"), HK Services Inc. ("HK Services"), and Mykhaylo "Mike" Sandulyak ("Sandulyak") ("collectively Defendants").

---

[1]  Plaintiffs have abandoned their claim for intentional infliction of emotional distress and substituted it for a claim of common law conspiracy and fraud. Accordingly, the Court will not address Fairfield's argument for dismissal of Count Three for failure to state a claim of intentional infliction of emotional distress. Fairfield's Motion to Dismiss Count Three is **MOOT**.

Fairfield is a Florida corporation engaged in the timeshare business with its headquarters and principal place of business in Orlando, Florida.  Fairfield does substantial business in the Eastern District of Virginia.  Fairfield enlisted the services of Sandulyak and Nunnery to recruit and hire immigrants to perform laundry, housekeeping, and other grounds maintenance services at Fairfield's properties in Williamsburg, Virginia.  Sandulyak, under the name of Carolina Janitorial, is a regional provider of immigrant labor that conducted business with Ambassador Hospitality ("Ambassador") and Proline Management ("Proline"), national providers of immigrant labor that are commonly owned, staffed and operated.[2]

Before March 6, 2002, Ambassador contacted Fairfield about providing immigrant labor for its resort and hotel services.  In response, Fairfield referred Ambassador to Nunnery who negotiated an agreement with Ambassador, in the name and on behalf of Fairfield.  This agreement was forwarded to the Fairfield's District Property Manager, Rand Gritts, who signed the agreement on receipt.  The agreement provided that Plaintiffs would remain employees of Carolina Janitorial, and thus be Carolina Janitorial's sole responsibility.  Further, the agreement provided that Fairfield had no right to supervise, direct or control Plaintiffs.  Through foreign visits and the internet, Sandulyak began recruiting Plaintiffs in Mongolia, Russia, Ukraine, Slovakia, America and elsewhere to provide housekeeping, grounds keeping, and other similar services to Fairfield.  However, contrary to the agreement, once Plaintiffs were employed on Fairfield's premises, Sandulyak did not supervise, direct or control Plaintiffs work.  There was

_____

[2]  Genesis Management Services Corporation ("Genesis Management") and Genesis Janitorial Services, Inc. ("Genesis Janitorial"), are parent and/or sister companies of Ambassador and Proline.  Genesis Management, Genesis Janitorial, Ambassador, and Proline have all been named Third-Party Defendants by Defendants Fairfield and PC&C.  Subsequently, Ambassador filed a counterclaim against Defendants Fairfield and PC&C and a cross claim against Defendant Nunnery.

2

not a Carolina Janitorial manager on premises, and Sandulyak visited Fairfield's premises only once every 1-3 months. During the relevant times, Nunnery actually supervised, directed and controlled Plaintiffs day-to-day work. This framework continued for over a year.

On April 21, 2003, Nunnery, on behalf of Fairfield, terminated the contract that existed between Fairfield and Ambassador. At that time, Nunnery, as the sole shareholder of PC&C, entered into a new contract on behalf of Fairfield whereby Ambassador continued the previous working relationship, but the per worker hour compensation decreased from $9.50 to $9.35. Business between Nunnery, PC&C, Fairfield, Ambassador, and Sandulyak continued under this agreement for approximately two years.

During the relevant time periods, Nunnery, acting on behalf of and for the benefit of Fairfield, PC&C and HK Services, supervised Plaintiffs as they provided services to Fairfield. Further, Nunnery, on behalf of the aforementioned parties, kept track of Plaintiffs weekly hours through the use of contract labor summaries, otherwise known as timecards. Nunnery forwarded these timecards, through either email or telefax, to Ambassador, Proline, Sandulyak, and Carolina Janitorial. Once received, the hours would be divided and invoiced by work areas and sent, by telefax, to PC&C.

Through HK Services, Nunnery, as sole shareholder, was also able to provide immigrant labor to Fairfield without Ambassador or Proline serving as the "middleman." Nunnery also supervised, directed and controlled the immigrants recruited through HK Services. Additionally, during this period of time, the payment hierarchy first worked as follows: Fairfield paid money for Plaintiffs' services to Nunnery, who then paid Ambassador, which paid Carolina Janitorial, who then paid Plaintiffs. However, Nunnery began withholding money, converting it for his own

3

personal use, and failing to pay Ambassador.  Accordingly, the hierarchy for payment changed as follows:  Fairfield paid monies for Plaintiffs' services to Ambassador directly, who then paid Carolina Janitorial, who then paid Plaintiffs.  However, even with the latter payment structure in place, Plaintiffs allege that they worked over 40 hours per week, and were not paid overtime. Plaintiffs allege that Fairfield, Nunnery and PC&C conspired with Ambassador and Proline to label Plaintiffs as "subcontractors" or "contractors" instead of "employees" so as to avoid paying overtime, and any legal liability associated with such failure to pay overtime.  Plaintiffs allege further that, during this time, they were required to pay deposits to Sandulyak, Carolina Janitorial, and Nunnery as a condition of working.

On or about March 30, 2005, Ambassador sent Fairfield a new agreement that increased the hourly rate to $9.85.  Ambassador proposed that Fairfield implement a new labor model by staffing with its own employees under the "H2b Visa Program" instead of using Sandulyak and Carolina Janitorial.  Fairfield agreed to try the H2b Visa Program and the agreement was redrafted with a provision for another hourly rate increase to $10.50, plus overtime.  Ultimately, Fairfield failed to sign the new agreement.  From March 28, 2005 to May 8, 2005, Fairfield continued to use the payment structure that was in place under the old agreement.

On May 9, 2005, Fairfield terminated approximately twenty-two immigrant workers, whose wages had previously been withheld by Nunnery.  Further, Nunnery, on behalf of Fairfield, advised Ambassador that Fairfield would be terminating their contract.  However, Fairfield told Sandulyak and Carolina Janitorial that the immigrant workers had instead abandoned their positions.  At this time, Fairfield allowed Nunnery, HK Services, and PC&C to take the place of Ambassador.  Throughout this time, although Fairfield represented that

4

Nunnery, HK Services, and PC&C were mere contractors, they engaged in actions and received benefits of an employee.

On August 8, 2005, Plaintiffs filed their initial complaint.[3]  Shortly thereafter, Plaintiffs filed their first amended complaint on August 17, 2005.  On October 18, 2005, the Court granted Plaintiffs leave to file a second amended complaint.  Fairfield filed its answer to the second amended complaint on November 14, 2005.  At the same time, Fairfield filed a Motion for Partial Dismissal of the Complaint.  Plaintiffs filed a Memorandum in Opposition to the Motion for Partial Dismissal on November 28, 2005.  Fairfield filed a reply on December 5, 2005.  This matter is now ripe for adjudication.[4]

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A court will grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim."  *Adams v. Bain*, 697 F.2d 1213,

---

[3]  Plaintiffs make reference to a class action; however, class certification must be sought by a formal motion for class certification.  Accordingly, until the Court grants class certification, each Plaintiff is viewed individually, and not as class members.

[4]  Plaintiffs filed a Motion for Leave to File a Third Amended Complaint on December 2, 2005.  On December 16, 2005, Fairfield filed a Memorandum in Opposition to Plaintiffs' Second Motion for Leave to File a Third Amended Complaint.  Subsequently, Plaintiffs filed a reply on December 23, 2005 seeking to rely on the amendments attached to the reply as the "most current and comprehensive" amendment.  For the purpose of Fairfield's Partial Motion to Dismiss, the Court finds it appropriate to **GRANT** Plaintiffs' Motion for Leave to file a Third Complaint.  *See Chisolm v. TranSouth Financial Corp.*, 95 F.3d 331, 339 (4th Cir. 1996) (proper to grant leave to amend the complaint, instead of dismissal).  Accordingly, the Court will analyze the Partial Motion to Dismiss against Plaintiffs' amendments to the complaint that were submitted to the Court on December 23, 2005.

1216 (4th Cir. 1982) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969)).  A court reviewing a motion to dismiss relies solely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).  In a motion to dismiss, the court considers the facts in the light most favorable to the plaintiff, and assumes that the facts alleged in the plaintiff's complaint are true. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 229 (4th Cir. 2004) (citing *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir. 1993)).

### III.  DISCUSSION

**A.      Count Two - Unjust Enrichment**

In Count Two, Plaintiffs allege that Defendants were unjustly enriched because Plaintiffs were required to pay a deposit to be allowed to work.  Fairfield moves for dismissal of Count Two on the ground that the factual allegations set forth by Plaintiffs fail to state that Fairfield was a participant in the alleged deposit scheme.  Specifically, Fairfield argues that Plaintiffs only allege that deposits were given directly to Sandulyak, Nunnery, HK Services, and PC&C, and fail to allege that such deposits were given to or received by Fairfield.  In response, Plaintiffs argue that Fairfield treated Nunnery as an employee, thus giving him actual and apparent authority to act on its behalf.  As a result of such treatment, Plaintiffs argue that Nunnery's taking of deposits is effective against Fairfield.

Under Virginia Law, to establish a claim for unjust enrichment a plaintiff must allege: "(1)  a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit

6

without paying for its value." *Allaun v. Scoot*, 59 Va. Cir. 461 (Norfolk Cir. 2002) (internal quotation marks and citations omitted).  The Court finds that Plaintiffs have alleged sufficient facts to state a claim of unjust enrichment against Fairfield.

Although, Plaintiffs do not allege that deposits were given directly to Fairfield, allegations do exist that such deposits were given to Nunnery, who Plaintiffs allege was "clothed as one of [Fairfield's] employees and agents."  (Pls.' Third Am. Compl. ¶ 57.)  More importantly, Plaintiffs detail actions on the part of Fairfield by which the finder of fact could determine that Nunnery, while proclaiming to be a mere contractor, was in fact an employee or otherwise an agent of Fairfield.  (Pls.' Third Am. Compl. ¶¶ 57-8.)  Virginia state courts "have long adhered to the rule that a principal is bound by representations of his agent, made either in the scope of his employment or in furtherance of the object for which he is employed." *Nationwide Ins. Co. v. Patterson*, 331 S.E.2d 490, 632 (Va. 1985) (quoting *Cerriglio v. Pettit*, 113 Va. 533, 542, 75 S.E. 303, 307 (Va. 1912) (finding that although the principal did not directly participate in the misrepresentation of the agent, it is still liable for the agents conduct where the principal engages in conduct that holds the agent out as such)).  Accordingly, by alleging that Nunnery took deposits from Plaintiffs, and by further alleging that Fairfield treated Nunnery as an agent, Plaintiffs have alleged facts sufficient to state a claim of unjust enrichment against Fairfield.  For the foregoing reasons, Fairfield's Motion to Dismiss Count Two is **DENIED**.

**B.**     **Count Four  - RICO and RICO Conspiracy**

Fairfield moves for dismissal of Count Four on several grounds.  First, Fairfield argues that Plaintiffs have failed to adequately allege the underlying predicate acts needed to state a cause of action under RICO. Second, Fairfield, alternatively, asserts that even assuming Plaintiffs have alleged predicate acts of fraud, Plaintiffs have not pled the acts with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b).  Finally, Fairfield asserts that, even where predicate acts have been pled, Plaintiffs have failed to establish a pattern of racketeering activities as required to state a claim under RICO.  The Court addresses each issue in turn.

**1.**     **Predicate Acts**

The RICO statute defines racketeering activity to include, among other things, any act indictable under specified federal statutes, including 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § 1956 (Money Laundering).  18 U.S.C. § 1961(1) (2006). Such acts have been labeled "predicate acts."  In this case, the predicate acts upon which Plaintiffs rely are mail fraud, wire fraud, and money laundering.  Fairfield argues that Plaintiffs have failed to establish the underlying elements needed to state a claim for the predicate acts upon which they rely.  Accordingly, Fairfield asserts that such failure leaves Plaintiffs without any predicate acts upon which to base a RICO violation.  Therefore, the Court must first address whether the underlying predicate acts needed to establish Plaintiffs' RICO claim have been sufficiently pled.

**a.**     **Mail and Wire Fraud**

8

Plaintiffs allege that Fairfield committed mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively. Fairfield contends that Plaintiffs have failed to state a cause of action under the mail and wire fraud statutes. Specifically, Fairfield argues that Plaintiffs do not allege that the mails or wires conveyed fraudulent or false information. Fairfield argues that the paychecks, themselves, are nothing more than a representation of money paid, and do not contain fraudulent misrepresentations. Further, Fairfield asserts that the mails and wires were utilized in the course of business. The Court does not find this argument persuasive.

The core elements that a plaintiff must prove for mail and wire fraud are essentially the same. A plaintiff must show that: (1) defendant knowingly participated in a scheme to defraud, and (2) the mails or interstate wire facilities were used in furtherance of the scheme. *See Pereira v. United States*, 347 U.S. 1, 8 (1954). It is not necessary that the use of mails or wire facilities be an essential element in the scheme. *Id.* "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Id.* at 8-9.

In this case, Plaintiffs allege that Fairfield knowingly participated in the scheme to defraud Plaintiffs by "systematically not paying overtime wages on a widespread basis" in violation of FLSA. (Pls.' Third Am. Compl. ¶ 72-A.) Specifically, Plaintiffs allege that "such payroll checks always were . . . miscalculated based on 'straight' time rates alone without any FICA, Social Security and/or other 'employee' withholdings." (Pls.' Third Am. Compl. ¶ 106-B.) Therefore, contrary to Fairfield's assertion, Plaintiffs have clearly pled that the payroll checks were "false and deceptive," by misleading Plaintiffs about their status and rights under FLSA. (Pls.' Third Am. Compl. ¶ 106-B.)

9

Additionally, Plaintiffs allege that Fairfield utilized the mails and fixed-line telephone transmissions in interstate commerce in furtherance of the scheme. The fact that paychecks were mailed or timecards were transmitted in the ordinary course of business is irrelevant under these circumstances. The mailing and transmittal of payroll checks and timecards were "step[s] in [the] plot," and were incident to the essential part of the scheme. *See Badders v. United States*, 240 U.S. 391, 394 (1916) (finding it sufficient for the mailing to be "incident to an essential part of the scheme"). As a result, Plaintiffs have sufficiently pled mail and wire fraud as predicate acts upon which a claim under RICO may rest.

### b.  Money Laundering

In order to establish a prima facie case for money laundering, in violation of 18 U.S.C. § 1956, a plaintiff must prove: (1) that the defendant conducted or attempted to conduct a financial transaction, (2) which the defendant then knew involved the proceeds of unlawful activity, and (3) with the intent to promote or further unlawful activity. *United States v. Gaytan*, 74 F.3d 545, 555 (5th Cir. 1996).

Fairfield argues that Plaintiffs have failed to allege specific intent or to specify an unlawful activity. The Court finds that, through amendment, Plaintiffs have cured the defects. Plaintiffs Complaint, as amended, alleges that Fairfield, along with others,

> knowingly attempted to conduct and actually conducted transactions with monetary instruments or financial institutions . . . involving the proceeds of Mail Fraud, with the *intent* to promote the carrying on of Mail Fraud [an unlawful activity]; with the *intent* to violate Internal Revenue Code Section 7201 and/or 7206 [an unlawful activity]; and/or with the *intent* to avoid a transaction reporting requirement under state and/or federal law [an unlawful activity]."

(Pls.' Third Am. Compl. ¶ 107) (emphasis added).  The Court finds such allegations sufficient to state a claim of money laundering, a predicate act under RICO.

### 2.   Sufficiency of Pleading

RICO imposes criminal and civil liability on those who engage in certain "prohibited activities."  18 U.S.C. §§ 1961-1968 (2006).  The statute creating the civil cause of action, 18 U.S.C. § 1964(c), provides for recovery of treble damages and attorneys' fees to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c) (2006).  The Fourth Circuit has found that the "by reason of" language set forth in 18 U.S.C. § 1964(c) creates certain "standing" requirements before one can attempt to state a claim under 18 U.S.C. § 1962.  *Brandenburg v. Seidel*, 859 F.3d 1179, 1188 n.10 (1988).  Specifically the requirements are that:  (1) the plaintiff must have detrimentally relied on the predicate acts of racketeering activity; (2) the predicates acts must be the proximate cause of injury to the plaintiff; and (3) the plaintiff must suffer actual injury.  *Id*.  (finding that "while . . . it is not necessary to establish detrimental reliance by the victim in order to make out a violation of the federal mail fraud statute, such reliance is necessary to establish injury to business or property 'by reason of' a predicate act of mail fraud within the meaning of § 1964(c)") (internal citations omitted).

In this case, Plaintiffs have amended their complaint to clearly allege that they relied to their detriment on the fraudulent paychecks they received through the mail, which did not provide for overtime pay pursuant to FLSA requirements.  Plaintiffs further allege that such predicate acts of mail fraud proximately caused their injury, namely receiving less money than they were entitled under FLSA.  For example, Plaintiffs state that they "justifiably relied on  . . .

repeated misrepresentations . . . which proximately caused them substantial damages.  In

detrimental reliance . . . Plaintiffs were lulled and acquiesced to accept the paychecks without

any 'overtime' compensation." (Pls.' Third Am. Compl. ¶ 69-A.)  There are several instances in

Plaintiffs' complaint where it is alleged that Plaintiffs "relied to their detriment" and that

predicate acts "proximately caused [their] damages."  (Pls.' Third Am. Compl. ¶ 106-B.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must accept Plaintiffs well-pled

allegations as true.  *Randal v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514

U.S. 1107 (1995).  Accordingly, the Court finds that Plaintiffs have adequately alleged facts to

satisfy the standing requirement necessary to state a violation under Section 1962.  Next, the

Court must determine whether Plaintiffs have sufficiently stated a claim under Section 1962.

> **3.      Pattern of Racketeering Activity under Section 1962**

In this case, Plaintiff alleges that Fairfield violated 18 U.S.C. §§ 1962(c) and (d) of

RICO.  Title 18 U.S.C. §§ 1962(c) and (d) provide that a person who is employed by or

associated with an enterprise cannot conduct the enterprise's affairs through a pattern of

racketeering, or conspire to do such.  18 U.S.C. §§ 1962(c),(d) (2005).  Both violations require

that Plaintiffs establish the following three elements to bring a civil RICO claim: (1) a person

who engages in (2) a pattern of racketeering activity (3) connected to the acquisition,

establishment, conduct, or control of an enterprise.  *Delta Truck & Tractor, Inc. v. J.I. Case Co.*,

855 F.2d 241, 242 (5th Cir. 1988), *cert denied*, 489 U.S. 1079 (1989).  Fairfield does not dispute

that it is a person under RICO, or that Plaintiffs have pled that an enterprise existed.  Fairfield

disputes that Plaintiffs have adequately pled the "pattern of racketeering" element.  Thus, the

Court will only address this element.

A "pattern of racketeering activity" is defined as at least two predicate acts within a ten year period. 18 U.S.C. § 1961(5) (2006). However, courts have held that alleging only two predicate acts is not wholly sufficient to satisfy the pattern of racketeering element. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237-38 (1989). In *Northwestern Bell*, the United States Supreme Court held that in order to establish a pattern of racketeering activity, a plaintiff must not only allege that at least two predicate acts existed, but that the predicate acts are "related" and amount to or pose a threat of "continued" criminal activity. *Id*. at 239. "It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id*. (citing 116 Cong. Rec., at 18940 (1970) (Sen. McClellan)).

As previously established, the predicate acts upon which Plaintiffs rely are mail fraud, wire fraud, and money laundering. Throughout the Complaint, Plaintiffs allege more than two predicate acts of mail fraud, wire fraud, and money laundering with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (finding that where RICO claims are based upon fraud, Rule 9(b) applies, and the predicate acts must be pled with particularity); *see also Harrision v. United States*, 176 F.3d 776, 784 (4th Cir. 1999) ("A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendants has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."). Plaintiffs allege that such acts of fraud and money laundering are part of a scheme to deny immigrant workers overtime pay and other minimum hourly compensation, in violation of FLSA. Specifically, paragraph 105 details the acts of wire fraud, paragraph 106 alleges mail fraud, and paragraph 107 alleges money laundering

that Fairfield, along with others, executed in furtherance of the overall scheme to defraud

Plaintiffs of their FLSA benefits.  (Pls.' Third Am. Compl. ¶¶ 105-7.)  All paragraphs detail the

time, place, contents of the false representations, the identity of the person(s) making the

misrepresentations, and what the person(s) obtained by the representation.  (Pls.' Third Am.

Compl. ¶¶ 105-7.)  Given that Plaintiffs have stated at least two predicate acts with sufficient

particularity, the Court must examine whether these predicate acts are "related" and "continuous"

as required to show that a pattern of racketeering activity existed.

### a.    Relationship

The relationship element may be satisfied by showing that the criminal acts "have the

same or similar purposes, victims, or methods of commission, or otherwise interrelated by

distinguishing characteristics and not isolated events."  *Northwestern Bell*, 492 U.S. at 240

(citing 18 U.S.C. § 3575(e)).

In this case, Plaintiffs allege that the false and misleading paychecks they received

through the mail constituted predicate acts of mail fraud and money laundering that involved the

similar purpose of denying them overtime compensation in violation of FLSA, and involved all

the similar victims through the same method of mailings.  Based on these allegations, the Court

finds that Plaintiff has sufficiently alleged the necessary relationship between the predicate acts.

### b.    Continuity

Continuity can be shown over a closed or open period of repeated conduct.  *Id*. at 241.

Plaintiffs allege that Fairfield engaged in conduct over an open period of time.  An open-ended

period of continuity can be established where:  (1) the related predicates involve a distinct threat

of long-term racketeering activity; (2) the predicate acts are part of an ongoing entity's regular

way of doing business; or (3) the predicate acts are a regular way of conducting defendant's ongoing legitimate business. *Id*. at 243-43.   In applying the continuity framework set forth in *Northwestern Bell*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") found that the plaintiffs failed to satisfy the continuity prong for the purposes of establishing RICO's pattern element. *Menasco*, 886 F.2d at 684.  Specifically, the Fourth Circuit provided that the defendant's fraudulent goal involved only one perpetrator, one set of victims, and the transaction only took place over a one year period. *Id*. (noting also that *Menasco* was different from *Northwestern Bell* given the number of victims, as well as the duration and magnitude of the scheme to defraud).  Under such facts, the Fourth Circuit held that the predicate acts did not constitute "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Id*. (quotations omitted) (citing *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987)).

In this case, Plaintiffs allege continuity by pleading that the predicate acts are Fairfield's regular way of conducting their ongoing legitimate business.  Unlike the plaintiffs in *Menasco*, Plaintiffs have alleged that Defendants' fraudulent scheme involved over 40 individuals, included at least 5 active perpetrators, and thousands of payroll checks over a 3 year period. Accordingly, the Court finds that such facts allege ongoing unlawful activities with a magnitude and scope that poses a threat to social well-being.  Therefore, the Court finds that Plaintiffs have sufficiently pled facts as necessary to allege both continuity and relationship.  Having sufficiently pled both, the Court finds that Plaintiffs have adequately alleged a pattern of racketeering. Fairfield's Motion to Dismiss Count Four is **DENIED.**

**IV. CONCLUSION**

For the foregoing reasons, Fairfield's Partial Motion to Dismiss Counts Two and Four is

**DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order

to counsel of record.

**IT IS SO ORDERED.**


_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
March 2  , 2006

16